**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHEN ROYBAL, an individual; and COLLEEN ROYBAL, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTRYWIDE HOME LOANS, INC., a Foreign Corporation; BANK OF AMERICA HOME LOAN SERVICING, LP, a Foreign Corporation; LAWYERS TITLE OF NEVADA INC., a Nevada Corporation; RECONTRUST COMPANY, N.A., a Foreign Corporation; MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., a Foreign Corporation; and JOHN DOES 1 through 5;<br><br>Defendants. | 2:10-CV-750-ECR-PAL<br><br><br><u>**Order**</u> |

    Plaintiffs in this case are the owners of a home in Las Vegas, Nevada.  Defendants are Countrywide Home Loans, Inc. ("Countrywide"), Bank of America Home Loan Servicing, Recontrust Company ("Recontrust") and Mortgage Electronic Registration Systems, Inc. ("MERS").

    Now pending are Defendants' motion to dismiss (#13), Plaintiffs' counter-motion for partial summary judgment (#15) and Defendants' motion for a hearing regarding Defendants' motion to dismiss (#31).  The motions are ripe, and we now rule on them.

### I. Factual and Procedural Background

The facts as alleged in the complaint are as follows: on August 24, 2004, Plaintiffs entered into a promissory note ("the First Note") secured by the property located at 3018 Panache Street in Las Vegas, Nevada. On May 12, 2006, Plaintiffs obtained a second loan on the property, from Countrywide. On June 6, 2009, Recontrust recorded a Notice of Default and Election to Sell ("NOD") with respect to the First Note. On or about September 9, 2009, Recontrust Company recorded a Notice of Trustee's Sale ("NOS"). Nevertheless, the trustee's sale never took place.

On or around November 15, 2009, Plaintiffs received a call regarding their second loan. The caller purported to be acting on behalf of Countryside and sought information relating to the second note and second deed of trust, and asked if someone had worked with Plaintiffs on obtaining a loan modification. When Plaintiffs further questioned the caller, she claimed to be representing an insurance company that received a loss claim from Countrywide regarding Plaintiffs' second loan.

On April 13, 2010, Plaintiffs filed a lawsuit in state court. On May 20, 2010, Defendants removed (#1) the lawsuit to our court, invoking our diversity jurisdiction. On May 27, 2010, Defendants filed a request for judicial notice (#12) and a motion to dismiss (#13). Plaintiffs opposed (#17) the motion to dismiss and, Defendants replied (#27).

On June 7, 2010, Plaintiffs filed a counter-motion (#15) for summary judgment seeking to quiet title against Defendant Lawyers Title of Nevada Inc. ("LTN") and to prevent LTN from foreclosing on

2

Plaintiffs' home.[1]  LTN did not oppose the motion.  Pursuant to our Order (#29) approving a stipulation (#28) of the parties, LTN is no longer a defendant in this case.

## **II. Motion to Dismiss Standard**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

---

[1] Plaintiffs' counter-motion was filed in response to LTN's motion for summary judgment, filed May 21, 2010 in state court.

3

1    Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
2 normally limited to the complaint itself.  <u>See</u> <u>Lee v. City of L.A.</u>,
3 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
4 materials outside the pleadings in making its ruling, it must treat
5 the motion to dismiss as one for summary judgment and give the non-
6 moving party an opportunity to respond.  Fed. R. Civ. P. 12(d);
7 <u>see</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003).  "A
8 court may, however, consider certain materials — documents attached
9 to the complaint, documents incorporated by reference in the
10 complaint, or matters of judicial notice — without converting the
11 motion to dismiss into a motion for summary judgment."  <u>Ritchie</u>, 342
12 F.3d at 908.

13    If documents are physically attached to the complaint, then a
14 court may consider them if their "authenticity is not contested" and
15 "the plaintiff's complaint necessarily relies on them."  <u>Lee</u>, 250
16 F.3d at 688 (citation, internal quotations, and ellipsis omitted).
17 A court may also treat certain documents as incorporated by
18 reference into the plaintiff's complaint if the complaint "refers
19 extensively to the document or the document forms the basis of the
20 plaintiff's claim."  <u>Ritchie</u>, 342 F.3d at 908.  Finally, if
21 adjudicative facts or matters of public record meet the requirements
22 of Fed. R. Evid. 201, a court may judicially notice them in deciding
23 a motion to dismiss.  <u>Id.</u> at 909; <u>see</u> Fed. R. Evid. 201(b) ("A
24 judicially noticed fact must be one not subject to reasonable
25 dispute in that it is either (1) generally known within the
26 territorial jurisdiction of the trial court or (2) capable of

4

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Discussion

A. Quiet Title

The first claim in Plaintiffs' Complaint is quiet title. A quiet title action is the proper method by which to adjudicate disputed ownership of real property rights. See Howell v. Ricci, 197 P.3d 1044, 1046 n.1 (Nev. 2008). Though not properly a cause of action, an action to quiet title is an equitable proceeding in which a party seeks to settle a dispute over ownership of property or to remove a cloud upon his title to the property. MacDonald v. Krause, 362 P.2d 724 (Nev. 1961). Although this has not been explicitly addressed by the Nevada Supreme Court, a widely accepted rule in such actions is that the party must tender the undisputed amount due and owing to challenge the validity of a sale or title to the property. See, e.g., Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996). In essence, under the tender rule, he who seeks equity must do equity. See McQuiddy v. Ware, 87 U.S. 14, 19 (1873). Indeed, the issue of tender was a factor considered by the Nevada Supreme Court when it ruled in favor of a party challenging a sale on their property due to past due taxes. Provenzano v. Clark County, 319 P.2d 855, 857 (Nev. 1957) ("Plaintiff's action was to quiet title to the property involved, accompanied by a tender to pay all taxes.").

With respect to the issue of tender, Plaintiffs allege that "Countrywide and BOA, on information and belief, have been paid for

5

their Second Note and Second Trust Deed through an insurance claim." (Compl. § 41 (#1).)  Plaintiffs also allege that by "bundling the First Note and selling it [Defendants] have been paid for the underlying obligation."  (Id. § 38.)  These allegations are not only conclusory and lacking in factual support, they are also not tantamount to an allegation that Plaintiffs have tendered the amount owed on their mortgages.  Plaintiffs' first claim will therefore be dismissed.

### B. Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' second claim is for breach of the implied covenant of good faith and fair dealing.  In every contract, there is an implied covenant of good faith and fair dealing: "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."  Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 923 (Nev. 1991).  A breach of the covenant occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ."   Id. at 922-23.

In this case, Plaintiffs do not allege facts that would establish that the manner in which Defendants complied with the contracts at issue — the promissory notes and deeds of trust — contravened the intention or spirit of the contracts.  Plaintiffs allege that Defendants failed to provide adequate notice when initiating foreclosure proceedings, failed to adequately negotiate a

6

loan modification and failed to inform Plaintiffs about the insurance claim.  The manner in which Defendants conducted themselves with respect to modification of Plaintiffs' loans and foreclosure on Plaintiffs' house is irrelevant to the issue of whether or not Defendants deliberately contravened the intention and spirit of the initial loan contracts.  Moreover, Plaintiffs allege no facts regarding the specific nature of the referenced insurance claim.  Therefore, it is impossible to evaluate the import of this alleged insurance claim with respect to this claim for relief. Thus, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

### C. Declaratory Relief: Lacks Standing to Foreclose on First Deed of Trust

Plaintiff's third claim seeks declaratory relief under Nev. Rev. Stat. § 30.040 that "MERS and any of its agents, successors or assigns lacks standing to foreclose on the Property because they have no rights under the First Note."  (Compl. ¶ 62 (#1-4).)   Nev Rev. Stat § 30.040 provides as follows:

> Any person interested under a deed, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Nev Rev. Stat § 30.040.

Plaintiffs' position with respect to MERS's inability to foreclose is grounded in two theories: First, Plaintiffs claim that although MERS is listed under the First Deed of Trust as the

7

mortgagee and nominee for the lender, MERS is not "listed anywhere on the First Note or even referred to in the First Note." (Compl. ¶ 57 (#1-4).) Thus, unless MERS can "produce evidence of a legal right under the First Note, they cannot foreclose on the First Trust Deed." (Id. ¶ 59.) Second, Plaintiff claims that "the Lender has already been paid on the First Note, when the First Note was bundled with other notes and sold as mortgage-backed securities." (Id. ¶ 60.) We will examine each contention in turn.

Under Plaintiff's deed of trust, MERS is designated as the nominee for the original lender, Republic Mortgage, LLC. (RJN, Ex. A at 2 (#12-1).) MERS is also designated as the beneficiary "solely as nominee for Lender and Lender's successors and assigns" (Id. at 2 (#12-1).) As many courts have noted, however, "calling MERS a 'beneficiary' is both incorrect and unnecessary." Weingartner v. Chase Home Finance, LLC, --- F. Supp. 2d ----, No. 2:09-cv-02255, 2010 WL 1006708 at *2 (D. Nev. 2010). It is unnecessary because, in Nevada, the beneficiary is not the only entity that can record the notice of breach and election to sell. NEV. REV. STAT. § 107.080(2)(b). The trustee or "other person authorized to make the sale under the terms of the trust deed" may make the sale. Id. § 107.080(4). There is therefore no need for any "beneficiary" to make the sale.

MERS, as the nominee of the lender, has authority to act on behalf of the holder of the promissory note as to administration of the deed of trust, which includes the authority for substitution of trustees. Id. Moreover, there is a near consensus among district courts in this circuit that while MERS does not have standing to

8

foreclose as a beneficiary, because it is not one, it does have standing as an agent of the beneficiary where it is the nominee of the lender, who is the true beneficiary. <u>Weingartner</u>, --- F. Supp. 2d ----, 2010 WL 1006708 at *2; <u>See also</u> <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp. 2d 1177, 1190 (N.D. Cal. 2009); <u>Lane v. Vitek Real Estate Industries Group</u>, --- F. Supp. 2d ----, No. 2:10-335, 2010 WL 1956707 (E.D. Cal. 2010).

A possible defect in foreclosure remains "when a note has been negotiated, and there is no evidence that the foreclosing trustee is the nominee of the current holder or that the foreclosing trustee was substituted by a nominee of the current holder." <u>Weingartner</u>, --- F. Supp. 2d ----, 2010 WL 1006708 at *2. Plaintiffs' theory, however, is not based on such a defect. Indeed, Plaintiffs do not contend that Recontrust was not properly substituted as trustee by MERS. Rather, Plaintiffs' theory appears to be based on the circumstance that MERS is listed on the security instrument, but not on the promissory note itself. We have not discovered, nor have Plaintiffs provided, any authority indicating that the scope of MERS' agency must be apparent on the face of the promissory note. Indeed, such a circumstance would be anomalous at best. A deed of trust is a security instrument. It follows the promissory note and generally functions as an agency contract as between MERS and the lender. <u>See</u> <u>id.</u> at 3. Plaintiffs' theory thus fails.

Plaintiff's second theory — that "the Lender has already been paid on the First Note, when the First Note was bundled with other notes and sold as mortgage-backed securities" (Compl. ¶ 60 (#1-4)) — likewise fails. Plaintiffs do not allege facts supporting their

9

claim that their promissory notes were bundled with other notes and sold as mortgage-backed securities, and they fail to explain how that activity would lead to the conclusion that their particular loan was paid off.  Plaintiffs' third claim will therefore be dismissed.

### D. Declaratory Relief

Plaintiffs' fourth claim also seeks declaratory relief under Nev. Rev. Stat. § 30.040.  Specifically, Plaintiffs seek declaratory relief that: (1) the "Trust Deeds are worthless pieces of paper"; (2) the "obligation under the First Note has been satisfied by its sale as a mortgage-backed security"; (3) the "obligations under the Second Note has been satisfied by the collection of the insurance proceeds by Countrywide"; and (4) "no Defendant has authority to foreclose because of failure to provide adequate notice under NRS § 107.080, NRS § 107.085 and NRS § 107.086."  (Compl. ¶ 66 (#1-4).)

Plaintiff has not provided, nor have we discovered, any legal or factual support in favor of the first three proposition.  There does, however, appear to be factual and legal support in favor of the fourth to the extent the notice defect is premised on a violation of Nev. Rev. Stat. 107.085(3)(b).[2]  Indeed, it appears that the NOS may have been deficient with respect to form.[3]  NEV. REV. STAT. § 107.085(3)(b); (NOS, Ex. F (#12-1).)  Therefore, we will

---

[2] Plaintiffs allege no facts in support of a violation of Nev. Rev. Stat. § 107.080 or Nev. Rev. Stat § 107.086.

[3] Plaintiffs also allege that the NOD does not comply with Nev. Rev. Stat. § 107.085(3)(b).  Section 107.085, however, applies only to notices of sale.

10

deny Defendants' motion to dismiss with respect to this claim to the extent the claim is premised on deficiencies in the NOS.

### E. Injunctive Relief

Plaintiffs' fifth claim requests injunctive relief enjoining Defendants' foreclosure. As discussed above, the NOS does not appear to comport with Nevada's statutory requirements. Therefore, we will deny Defendants' motion to dismiss with respect to Plaintiffs' request for injunctive relief to the extent the injunctive relief is premised on deficiencies in the NOS.

### F. Counter-Motion

Plaintiffs' counter-motion for summary judgment (#15) seeks to quiet title against LTN and asks for declaratory relief that LTN can't foreclose on Plaintiffs' property. The motion (#15) is moot in light of our order (#29) granting the parties' stipulation of dismissal of LTN, and will be denied on that basis.

## IV. Leave to Amend

Under Rule 15(a) leave to amend is to be "freely given when justice so requires." In general, amendment should be allowed with "extreme liberality." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)). If factors such as undue delay, bad faith, dilatory motive, undue prejudice or futility of amendment are present, leave to amend may properly be denied in the district court's discretion. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

11

In light of the liberal spirit of Rule 15(a), Plaintiffs will be given leave to amend the claims dismissed by this Order. If the amended complaint is similarly deficient, however, we may be forced to conclude that further leave to amend would be futile. Moreover, if Plaintiffs choose not to amend the complaint this lawsuit will continue with respect to the claims not dismissed by this Order.

### V. Conclusion

Plaintiffs' first claim for quiet title fails because Plaintiffs do not allege that they have tendered the amount owed on their mortgages. Plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing likewise does not survive the present motion to dismiss because Plaintiffs allege no facts in support of the claim. Plaintiffs' third claim for declaratory relief does not pass muster; it is based on two untenable theories. Plaintiffs' fourth claim for declaratory relief survives the present motion to dismiss to the extent the claim is premised on deficiencies in the NOS. The record supports he proposition that the NOS did not conform to Nevada's statutory requirements. Finally, Plaintiffs' fifth claim, which requests injunctive relief enjoining Defendants from foreclosing on their property, survives the pending motion to dismiss to the extent it is based on the aforementioned deficiencies in the NOS. Plaintiffs will be given leave to amend their complaint.

**IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' motion to dismiss (#13) is **GRANTED** in part and **DENIED** in part on the following

basis: The motion is granted with respect to Plaintiffs' first, second and third claims.  With respect to Plaintiffs' fourth and fifth claims, the motion is denied only to the extent Plaintiffs' claim is based on deficiencies in the notice of sale.  The motion is granted in all other respects.

**IT IS FURTHER ORDERED THAT** Plaintiffs' counter-motion for partial summary judgment (#15) is **DENIED** as moot.

**IT IS FURTHER ORDERED THAT** Defendants' "motion for Hearing re 13 motion to Dismiss" (#31) is **DENIED** as moot.

DATED: December 9, 2010.

_____
UNITED STATES DISTRICT JUDGE